In re MERRILL LYNCH & CO., INC.
RESEARCH REPORTS SECURI-
TIES LITIGATION

In re Merrill Lynch & Co., Inc. eToys,
Inc. Research Reports Securities
Litigation

In re Merrill Lynch & Co., Inc. Home-
store.com Research Reports Secu-
rities Litigation

In re Merrill Lynch & Co., Inc.
iVillage, Inc. Research Reports
Securities Litigation

In re Merrill Lynch & Co., Inc.
Lifeminders Research Reports
Securities Litigation

In re Merrill Lynch & Co., Inc. LookS-
mart, Ltd. Research Reports Secu-
rities Litigation

In re Merrill Lynch & Co., Inc. Open-
wave Systems, Inc. Research Re-
ports Securities Litigation

In re Merrill Lynch & Co., Inc. Pets.
com, Inc. Research Reports Se-
curities Litigation

In re Merrill Lynch & Co., Inc.
Quokka Sports, Inc. Research
Reports Securities Litigation

No. 02 MDL 1484(MP).
Nos. 02 CV 6645(MP), 02 CV 9931(MP),
02 CV 6637(MP), 02 CV 9852(MP), 02
CV 7739(MP), 02 CV 3252(MP), 02 CV
3634(MP), 02 CV 7585(MP).

United States District Court,
S.D. New York.

Oct. 29, 2003.

See, also, 2003 WL 22451060, 289
F.Supp.2d 429.

Kaplan Fox & Kilsheimer LLP, New York City (Frederic S. Fox, Laurence D. King, Donald R. Hall, New York, NY, of counsel) for plaintiff's liaison counsel.

Finkelstein, Thompson & Loughran, (By Douglas G. Thompson, Donald J. Enright, Conor R. Crowley, Adam T. Savett), Washington, DC, Lead Counsel for the Homestore, iVillage, LookSmart and Co–Lead Counsel for Quokka Sports Class Member of Plaintiffs' Executive Committee.

Much Shelist Freed Denenberg Ament & Rubenstein, P.C., (By Carol V. Gilden, Joseph D. Ament, Christopher J. Stuart, Michael E. Moskovitz), Chicago, IL, Co–Lead Counsel for the Quokka Sports Class Member of Plaintiffs' Executive Committee.

Rabin, Murray & Frank LLP, (By Brian P. Murray, Jacqueline Sailer, Eric J. Belfi, Gregory Linkh), New York, NY, Lead Counsel for Openwave Class Co–Chairs of Plaintiffs' Executive Committee.

Cohen, Milstein, Hausfeld & Toll, P.L.L.C., (By Herbert E. Milstein, Steven J. Toll, Joshua S. Devore), Washington, DC, Linda P. Nussbaum, New York, NY,

Lead Counsel for Lifeminders Class Co–Chairs of Plaintiffs' Executive Committee.

Weiss & Yourman, (By Joseph H. Weiss, David C. Katz, Jack I. Zick, Richard A Acocelli, Moshe Balsam), New York, NY, Lead Counsel for eToys and Pets.com Class Member of Plaintiffs' Executive Committee.

Shapiro Haber & Urmy LLP, (By Edward F. Haber, Theodore M. Hess–Mahan), Boston, MA, Co–Chairs of Plaintiffs' Executive Committee, of counsel.

Skadden, Arps, Slate, Meager & Flom LLP, (By Jay B. Kasner, Edward J. Yodowitz, Scott D. Musoff, Joanne Gaboriault), New York, NY, for Defendants Merrill Lynch & Co., Inc. and Merrill Lynch, Pierce, Fenner & Smith Incorporated.

Foley & Lardner, (By Douglas M. Hagerman, Mark H. Carnow, James D. Ossyra), Samuel J. Winer, Washington, D.C., for Defendant Henry Blodget.

## DECISION AND ORDER

POLLACK, Senior District Judge.

### PREFACE

The plaintiffs in the above-captioned putative class actions would have this Court punish breaches of business ethics by principles applicable at law which did not at the time apply to such conduct. Although apparently aware of the course of the business and the conflicts of interest involved, the public regulators of business conduct failed to formulate pertinent rules directed to business conscience until after the burst of the internet bubble.

The measure of the defendants' legal responsibilities herein is what is prescribed in federal statutes such as the Private Securities Litigation Reform Act of 1995 (Reform Act) (15 U.S.C. § 78u–4(b)) and the securities laws. Those sources define the "fraud" cognizable herein by law. The defendants have not been shown in the complaints before the Court to have violated the terms or conditions of those legal mandates. The reasons follow.

### OVERVIEW

Defendants Merrill Lynch & Co., Inc. and its wholly-owned subsidiary Merrill Lynch, Pierce, Fenner & Smith Inc. move to dismiss the Consolidated Amended Complaints ("the Complaints") in the above-captioned actions for, *inter alia*, (1) failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and (2) failure to plead fraud with particularity, as required by the Reform Act and Rule 9(b) of the Federal Rules of Civil Procedure. Individual defendant Henry Blodget joins the motion.[1] For the reasons set forth below, the motion is granted.

The above-captioned cases are before this Court as part of a "phased" approach, agreed to between all the relevant parties and endorsed by this Court, to administering the volumes of complaints filed against defendants.[2] This Court previously dis-

---

1. "Defendants" is used collectively to refer to the corporate and individual defendants together throughout this opinion.

2. Originally, the instant phase, denominated Phase I by the parties, consisted of 12 cases. *See* Notice of Motion of Defendants, dated July 17, 2003. The plaintiffs in the Rhythms Net Connections action, 02 CV 6913, did not oppose the instant motion of defendants and were dismissed accordingly. *See Order Dismissing Rhythms Net Connections*, dated October 7, 2003. The motion to dismiss in Internet Strategies Fund, 02 CV 3176, will be treated separately as it involves issues distinct from those herein. Finally, the actions in All Aboard—The Training Junction, 03 CV 2927 and Focus Twenty Fund, 02 CV 10221, will be

missed the like complaints in the 24/7 Real Media, Inc. and Interliant Inc. actions and in the Global Technology Fund action on June 30, 2003 and July 2, 2003, respectively, and denied motions for partial reconsideration or to permit further amendment on August 12, 2003 and August 19, 2003, respectively. *See In re Merrill Lynch & Co., Inc.*, 273 F.Supp.2d 351 (S.D.N.Y. 2003); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 272 F.Supp.2d 243 (S.D.N.Y.2003). The instant motions to dismiss followed those decisions.

The lead plaintiffs in the actions subject to this motion have done nothing more than submit eight separate, but nearly identical, briefs that essentially reargue what this Court has already decided not just once, but four times. *See id.* Thus, in order, to further judicial economy, this Court will address why the Complaints in the above-captioned actions are subject to dismissal without attempting to restate entirely the reasoning in the 24/7, Interliant and Global Technology Fund decisions. Readers are referred to those decisions for a fuller explanation of the law and for a detailed recitation of the general background of facts to these cases. The Complaints in the above-captioned actions fail for the same reasons set forth in this Court's prior decisions.

*First,* the cardinal fault of each of the eight litigations before the Court is that each fails to plead that the alleged misrepresentations and omissions were the proximate cause of the losses complained of. Consequently, the Complaints fail to include allegations of cognizable damages from the alleged acts and omissions of the

defendants. On the other hand, the Court may take judicial notice of the burst of the notorious internet bubble which directly intervened during plaintiffs' ownership of the securities and caused the virtual destruction of their stock holdings, before the accrual of their claims. *See First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769–770 (2d Cir.1994). "The loss causation requirement is intended to fix a legal limit on a person's responsibilities, even for wrongful acts." *Castellano v. Young Rubicam, Inc.*, 257 F.3d 171, 186 (2d Cir.2001) (quotation and citation omitted). The burst of the bubble and the attendant market chaos are not chargeable to the defendants and represent intervening causes for which defendants are not responsible in the sequence of responsible causation.

*Second,* the overwhelming and widely dispersed collection of press articles and public speeches by top securities regulatory officials exposing the flaws in the business practices complained of put plaintiffs on inquiry notice thereof. As this Court has held, the "plethora of public information" put "[e]very investor of reasonable intelligence ... absolutely on inquiry notice," of the existence of the flaws of which they complain. *In re Merrill Lynch & Co., Inc.*, 273 F.Supp.2d at 389 (order denying reconsideration). The statutory periods of limitations to sue for such claims were exceeded and the claims are time-barred.

*Third,* a further fatal flaw with all eight remaining complaints is that all fail to plead adequate facts showing that the defendants acted with the requisite intent to defraud.[3] No cognizable facts are pleaded

---

treated separately because they have recently filed, or will file pursuant to Order of the Court, amended complaints.

**3.** The decision of the Court herein relates to all of the constituent actions of the above-captioned cases. The eToys litigation consists of 6 constituent actions, the Homestore.com litigation consists of 1 constituent action, the

to show that the defendants intended to cause loss to the plaintiffs by intentionally deceiving them. Plaintiffs miss the distinction between misrepresentations punishable as breaches of conscience by public regulators and those punishable at law by the courts.

*Fourth,* in addition to the foregoing reasons, the absence and insufficiency in law of the required aspects for such complaints under the Reform Act and Fed.R.Civ.P. 9(b) require dismissal.

Accordingly the amended complaints will be dismissed on the merits, with prejudice, and leave to amend further will be denied.

## DISCUSSION

## I. THE MARKET COLLAPSE INTERVENED DURING PLAINTIFFS' HOLDINGS BEFORE ACCRUAL OF THEIR CLAIMS

### A. The Alleged Artificial Inflation of Market Price Did Not Cause the Losses Claimed

█ Plaintiffs here offer the same theory of loss causation asserted by the 24/7 and Interliant plaintiffs that was rejected by the Court—that they were injured because the alleged misrepresentations and omissions artificially inflated the price of the securities and thereby allegedly in-

duced a disparity between the transaction price and the true investment quality of the securities.[4] Specifically, plaintiffs allege that they were damaged because they acquired the various securities at "artificially inflated prices" and that "had [they] known of the omitted material facts, [they] would not have purchased or otherwise acquired their ... securities ... or if they had ... they would not have done so at the artificially inflated prices which they paid."[5]

Just weeks after this Court's rejection of this theory of loss causation, the Court of Appeals fully agreed, holding that allegations of purchase-time value disparity, standing alone, cannot preclude operation of the loss causation requirement. *See Emergent Capital Inv. Mgmt. v. Stonepath Group Inc.*, 343 F.3d 189, 198 (2d Cir. 2003). Such an allegation of a purchase-time value disparity "amounts to nothing more than a paraphrased allegation of transaction causation. While it may explain why plaintiff purchased the ... stock, it does not explain why it lost money on the purchase [i.e the proximate cause], the very question that the [missing] loss causation allegation must answer." *Id.* at 198. The Second Circuit went on to explain that plaintiffs must allege a causal relationship between the misconduct alleged and the loss incurred. *Id.* at 198–199. The allegations of the Complaints

---

iVillage litigation consists of 1 constituent action, the Lifeminders litigation consists of 1 constituent action, the LookSmart litigation consists of 2 constituent actions, the Openwave litigation consists of 8 constituent actions, the Pets.com litigation consists of 3 constituent actions, and the Quokka Sports litigation consists of 2 constituent actions. The names and docket numbers of each of the constituent actions for each of the eight litigations are contained in *Case Management Order No. 1,* dated December 9, 2002, and *Consolidation Order,* dated December 24, 2002.

4. The statute applicable to these actions provides that "[i]n any private action arising under this title, the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this title caused the loss for which the plaintiff seeks to recover damages." 15 USCS § 78u–4(b)(4).

5. *See* eToys Compl. ¶¶ 156–164; Homestore Compl. ¶¶ 180–184; iVillage Compl. ¶¶ 158–162; Lifeminders Compl. ¶¶ 174–177; LookSmart Compl. ¶¶ 163–167; Openwave Compl. ¶¶ 166–170; Pets.com Compl. ¶¶ 146–151; Quokka Sports Compl. ¶¶ 208–212.

make clear that the harm suffered by the plaintiffs was not caused by any alleged fraud of the defendants; rather, it was caused by the direct intervention of the crash of the internet bubble in the market for which the defendants were not responsible.[6] *See Suez Equity Investors, L.P. v. Toronto Dominion Bank,* 250 F.3d 87, 96 (2d Cir.2001); *First Nationwide,* 27 F.3d at 769–70 (2d Cir.1994) *cert. den.* 513 U.S. 1079, 115 S.Ct. 728, 130 L.Ed.2d 632 (1995).

**B. The Purported Misrepresentations and Omissions Were Not Causally Connected with Plaintiff's Losses From Their Investments**

■ Plaintiffs plead that neither they nor the market learned of the allegedly undisclosed conflicts of interest of the research analysts and their employer, or the allegedly fraudulent nature of the projections for future price appreciation, until April 8, 2002, more than two years after their purchases, and after the intervening burst of the bubble in the year 2000 and the direct losses that followed.[7] Consequently, as a simple matter of logic, plaintiffs are unable to connect the undisclosed allegedly "fraudulent" conduct with the losses asserted to have been appreciated by them in 2002. *See Emergent Capital Inv. Mgmt.,* 343 F.3d at 198–99 (plaintiff must allege "a causal connection between defendants' non-disclosures and the decline in the value of [the] securities"); *see also Robbins v. Kroger Props. Inc.,* 116 F.3d 1441, 1448 (11th Cir.1997) ("Our decisions explicitly require proof of a causal connection between the misrepresentation and the investment's subsequent decline in value."); *In re Merrill Lynch & Co., Inc.,* 273 F.Supp.2d at 368 (examining whether the complaints alleged that the purported misconduct proximately caused the losses in 2000).

For example, the eToys plaintiffs attempt to tie the content of a research report to their losses; however, they do not allege a correlation, let alone a causal link, between the alleged disclosure of the purported fraudulent conduct in April 2002 and the destruction of the investment. Instead, plaintiffs in eToys refer to a decline in price that occurred the same day as a November 8, 2002 research report which, among other things, downgraded the rating from D–3–2 to D–3–3. Plaintiffs in eToys fail to plead in any adequate form that it was the rating, as opposed to the unchallenged content of the report or other external factors, that caused the decline. Indeed, plaintiffs in all actions ignore completely the fact that contrary to their allegations of price inflation, the prices of the securities at issue sometimes *increased* when Merrill Lynch *downgraded* its rating, sometimes *decreased* when Merrill Lynch *upgraded* its rating, and often showed *wide fluctuations* even when Mer-

---

6. The Court may take judicial notice of the existence of the internet bubble and its subsequent crash. Fed.R.Evid. 201 (judicial notice of facts "generally known within the territorial jurisdiction of the trial court ... may be taken at any stage of the proceeding"); *Sherwin v. Oil City Nat'l Bank,* 18 F.R.D. 188, 194 (W.D.Pa.1955) (taking judicial notice of the stock market crash of October 1929); *Procacci v. Drexel Burnham Lambert, Inc.,* No. Civ. A 89–0555, 1989 WL 121984, at *2, n. 3 (E.D.Pa. Oct.16, 1989) (taking judicial notice of the stock market crash of October 1987 on a motion to dismiss); *Virtual Countries, Inc. v. Republic of South Africa,* 148 F.Supp.2d 256, 267 (S.D.N.Y.2001) (Schwartz, J.) (taking judicial notice of the internet market decline in 2000).

7. *See, e.g.,* eToys Opp. Br. at 22; Homestore Opp. Br. at 16–17; iVillage Opp. Br. at 12; Lifeminders Opp. Br. at 5; LookSmart Opp. Br. at 13–14; Quokka Sports Opp. Br. at 18.

rill Lynch issued *no reports at all.*[8] Not only do plaintiffs fail to plead in any adequate or other form the existence of a connection between the losses they incurred and the alleged fraud on the market, they also fail to allege in any way that their losses were a *foreseeable* consequence of the defendants' activity. *See Thornock v. Kinderhill Corp.,* 712 F.Supp. 1123, 1127 (S.D.N.Y.1989) (Sweet, J.).

The Second Circuit found in *Emergent* that the plaintiffs in that case adequately alleged loss causation regardless of the burst of the internet bubble. Accordingly, in *dicta,* the Second Circuit observed what should be obvious in a case in which there are adequate allegations of loss causation from a fraudulent misrepresentation in a face-to-face transaction: that determining (in that case) which of two possible causes was in fact the proximate cause "is a matter of proof at trial," and thus "not to be decided on a Rule 12(b)(6) motion to dismiss." *Id.* at 197.

In contrast, plaintiffs here have pled *no* second reason why their investments turned out to be losing ones. Plaintiffs here have failed to plead a cause which could have accounted for their losses, and only the intervening cause, the burst of the internet bubble, accounts therefor. As such, in contrast to *Emergent,* this Court is not faced with two possible causes to explain the losses of the plaintiffs. Where there is no proximate cause for the loss sustained other than the direct intervention of a market collapse, that collapse will govern on a Rule 12(b)(6) motion to dismiss. *See e.g. First Nationwide Bank,* 27 F.3d at 772 (affirming dismissal on 12(b)(6) motion on grounds that fall in price of security was the result of marketwide real estate crash rather than misrepresentation); *Powers v. British Vita, P.L.C.,* 57 F.3d 176, 189 (2d Cir.1995) (affirming dismissal of securities fraud claims on 12(b)(6) motion on grounds that intervening causes, including market crash, were the proximate causes of injury); *Bastian v. Petren Resources Corp.,* 892 F.2d 680, 684 (7th Cir.1990) (Posner, J.) (affirming the dismissal of a complaint with prejudice under Fed.R.Civ.P. 12(b)(6) because plaintiff's suggested "no reason *why* the investment was wiped out," and noting that plaintiffs' inability to adequately allege any other reason for their loss was evidence that the plaintiffs' loss was actually caused by the general downturn in oil prices) (emphasis in original). When factors other than the defendants' fraud are an intervening direct cause of a plaintiffs' injury, that injury cannot be said to have occurred by reason of defendants' actions. *See Brandenburg v. Seidel,* 859 F.2d 1179, 1189–90 (4th Cir.1988).[9]

Finally, as this Court previously noted, the market could not have been defrauded by the alleged failure to disclose the well-known conflicts or the supposed three-point rating system. Plaintiffs' own allegations and the articles upon which they rely evidence that the market was aware of the very conflicts and ratings issues raised by plaintiffs. The ratings issues

---

8. *See* Charts Comparing Ratings with Closing Prices, Gaboriault Decl. Exs. B2–B9.

9. Some plaintiffs allege that because their class periods do not even begin until late 2000, that the burst of the internet bubble cannot be considered an intervening cause with respect to their securities. While the Court has previously identified the peak of the bubble burst as being in March and April of 2000, plaintiffs' argument is without merit. A bubble does not necessarily operate entirely in a single day—the collapse is often drawn out and the effects on individual stocks may not be felt for months. *See e.g. Sherwin,* 18 F.R.D. at 194 (taking judicial notice of the stock market crash of October 1929 and its continuing effects throughout 1930, 1931 and 1932)

and conflicts for all of the securities were known to the market. *See In re Merrill Lynch & Co., Inc.,* 273 F.Supp.2d at 375.

## II. THE CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

■ Plaintiffs and defendants heatedly dispute whether the enlarged statute of limitations of the Sarbanes–Oxley Act for fraud claims under the securities laws, Pub.L. No. 107–204, § 804, 116 Stat. 745 (codified at 28 U.S.C. § 1658), applies to any of the above-captioned actions. However, the Court need not decide the issue at this time. Even if the Court assumes that the actions filed after July 30, 2002 are subject to a two year statute of limitations under the Sarbanes–Oxley Act, there was clearly enough publicly available information to put the plaintiffs on inquiry notice of their claims more than two years before the commencement of any of these actions.[10] *See Dodds v. Cigna Sec., Inc.,* 12 F.3d 346, 350, 352 n. 3 (2d Cir.1993) (holding that whether plaintiff was on inquiry notice is an appropriate subject for resolution as a matter of law at the pleading stage); *see also In re Merrill Lynch Ltd. Partnerships Litig.,* 154 F.3d 56, 60 (2d Cir.1998) ("[T]he question of inquiry notice need not be left to a finder of fact.").

Some plaintiffs suggest that their complaints are not barred by the statute of limitations merely because the class period ends less than the limitations period before they filed their actions.[11] Their reasoning is unconvincing. While this Court noted in its prior decision in 24/7 and Interliant that the failure to file an action within one year of the end of the class period was further reason to find those actions time-barred, the converse of that accepted proposition is not true. In *LC Capital Partners, LP v. Frontier Ins. Group, Inc.,* 318 F.3d 148 (2d Cir.2003), the class period ended on April 14, 2000 and the first action was filed on July 19, 2000, only three months after the end of the class period. *Id.* at 150, 153. The Second Circuit affirmed the ruling of the district court that the action was time-barred because the plaintiffs had been placed on inquiry notice at least as early as December 1998. *Id.* at 154. Thus, for inquiry notice purposes it is irrelevant when the class period ends. Similarly irrelevant is the fact that some class members may have purchased stock as late as the end of the class period.[12] *Id.*

---

**10.** All the constituent actions in the eToys, Homestore, iVillage, Lifeminders, LookSmart, and Quokka Sports consolidated actions were filed after the enactment of the Sarbanes–Oxley Act. However, none of the constituent actions in the Openwave and Pets.com actions were filed after the enactment of the Act and thus none of those actions have any claim to the enlarged limitations period.

**11.** Lifeminders Br. at 7–8 & n. 4; Openwave Br. at 14.

**12.** Even if plaintiffs are not deemed to be on inquiry notice until their respective class periods begin, still no plaintiffs filed within the limitations period. Of the actions which may arguably be subject to the extended limitations period of the Sarbanes–Oxley Act, the eToys' class period begins on June 17, 1999 but the first complaint was not filed until August 20, 2002, over 3 years later; the Homestore class period begins on Sept. 18, 1999 but the first complaint was not filed until Dec. 17, 2002, over 3 years later; the iVillage class period begins Nov. 9, 1999, but the first complaint was not filed until Aug. 20, 2002, nearly 3 years later; the LookSmart class period begins on May 25, 2000 but the first complaint was not filed until Sept. 26, 2002, nearly 2½ years later; the Lifeminders class period begins on Sept. 28, 2000 but the first complaint was not filed until Dec. 12, 2002, over 2 years later; the Quokka Sports class period begins on Aug. 23, 1999 but the first complaint was not filed until Sept. 19, 2002, over 3 years later. Of the actions which are clearly subject to a one-year limitations period, the Openwave class period begins Aug. 16, 2000 but the first complaint was not filed until April 29, 2002, over 1½ years later; the Pets.com class period begins on

## A. The Statute of Limitations Began to Run on the Date When Plaintiffs Were Placed on Inquiry Notice

 Plaintiffs erroneously assert that even if they were put on inquiry notice, the statute of limitations does not begin to run on their claims until the time that, in the exercise of reasonable diligence, plaintiffs should have discovered the alleged fraud.[13] However, the clearly defined rule in the Second Circuit is that:

> The duty of inquiry results in the imputation of knowledge of a fraud in two different ways, depending on whether the investor undertakes some inquiry. *If the investor makes no inquiry once the duty arises, knowledge will be imputed as of the date the duty arose* .... However, if the investor makes some inquiry once the duty arises, we will impute knowledge of what an investor, 'in the exercise of reasonable diligence, should have discovered' concerning the fraud, *Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir.2000), and in such cases the limitations period begins to run from the date such inquiry should have revealed the fraud. (citations omitted).

*LC Capital*, 318 F.3d at 154 (emphasis added).

Because plaintiffs here concede that they undertook no inquiry, there is no need to speculate as to what, in the exercise of reasonable diligence, plaintiffs might have discovered had they investigated. *See LC Capital*, 318 F.3d at 154 & n. 3; *compare Levitt v. Bear Stearns & Co., Inc.*, 340 F.3d 94, 104 (2d Cir.2003) (plaintiff undertook inquiry following "storm warnings" therefore scope of inquiry was issue of fact) *with LC Capital*, 318 F.3d at 154 & n. 3 (no inquiry following "storm warnings"); *Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.*, No. 02 Civ. 1230(LMM), 2003 WL 21088506, at *3 (S.D.N.Y. May 14, 2003) (where plaintiff does not allege that it made any inquiry, "the only issue to be resolved is the date the duty to inquire arose") (McKenna, J.); *see also In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1327 (3d Cir.2002) ("If plaintiffs do not investigate the storm warnings, they are deem[ed] ... on inquiry notice of their claims." (alterations in original and citation omitted)). The only task before the Court is to determine if inquiry notice matured more than two years before plaintiffs commenced their actions.

Plaintiffs' contentions that it is unfair to require them to plead with particularity the factual basis of the fraud while at the same time dismissing the Complaints because of the existence of inquiry notice are irrelevant. The Court need not decide whether the widespread newspaper articles and speeches by securities mavens were sufficient to sustain a complaint under the Reform Act and Fed.R.Civ.P. 9(b). The only question for the Court is whether those storm warnings were sufficient to require the plaintiffs to inquire and investigate. They were. Plaintiffs did not. In consequence, knowledge of the alleged fraud will be imputed to them as of the date when the duty to inquire arose. *LC Capital*, 318 F.3d at 154.

## B. Plaintiffs Were on Inquiry Notice of Their Claims More Than Two Years Before They Filed Their Claims

 Plaintiffs contend in their opposition briefs that the overwhelming collec-

March 8, 2000 but the first complaint was not filed until May 10, 2002, over 2 years later.

13. *See* eToys Opp. Br. at 19–22; Homestore Opp Br. at 16–17 & n. 7; iVillage Opp. Br. at 12 n. 7; LifeMinders Opp. Br. at 8–10 & n. 6; LookSmart Opp. Br. 12–13 & n. 7; Openwave Opp. Br. at 15 & n. 5; Pets.com Opp. Br. at 18–20; Quokka Sports Opp. Br. at 16–18 & n. 8.

tion of notices from the press and speeches by top securities regulatory officials, including SEC Chairman Arthur Levitt, (what they call "tid bits" of information) existing by early 2000 was "utterly insufficient" to provide them with the "quantum of information" necessary to put them on inquiry notice of the "detailed specific fraudulent scheme alleged in the complaints." [14]

First, plaintiffs ignore the controlling law in the Second Circuit that "[a]n investor does not have to have notice of the entire [alleged] fraud being perpetrated to be on inquiry notice.'" *Newman v. Warnaco Group, Inc.,* 335 F.3d 187, 193 (2d Cir.2003) (quoting *Dodds,* 12 F.3d at 350); *Addeo v. Braver,* 956 F.Supp. 443, 450–51 (S.D.N.Y.1997) ("[T]he question is not whether the materials suggested the full extent of defendant's deceit; the question is whether the materials suggested that there were any material misrepresentations.") (Sotomayor, J.); *Theoharous v. Fong,* 256 F.3d 1219, 1228 (11th Cir.2001) ("Plaintiff need not . . . have fully discovered the nature and extent of the fraud before [he was] on notice that something may have been amiss.") (alterations in original and citation omitted).

Second, the reality of the situation is directly to the contrary. The plethora of public information would have required even a *blind, deaf, or indifferent* investor to take notice of the purported alleged "fraud." Palpably, the plaintiffs, as well as the public regulators and indeed the whole investment community, were on inquiry

notice of the asserted "fraud," and the alleged conflicts of interest, well more than two years prior to the filing of the Complaints herein. Some of the widely broadcast explanations that the business was not a public utility, in terms which could not have been misunderstood even by the allegedly unsophisticated litigants in these suits, have been detailed at length in this Court's prior opinions. *See In re Merrill Lynch & Co., Inc.,* 273 F.Supp.2d at 379–381 & 383–388 (order denying reconsideration); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,* 272 F.Supp.2d at 265 & 266–267 (S.D.N.Y. 2003) (order denying reconsideration).[15] Such discussion need not be repeated here.

## C. Denial of Wrongdoing Does Not Eliminate Duty to Inquire

■ The newspaper articles that plaintiffs submitted with the Declaration of Frederic S. Fox do not serve to negate any of the storm warnings that placed the plaintiffs on inquiry notice. *Newman,* 335 F.3d at 194. These denials of wrongdoing were not contemporaneous explanations for the myriad articles that served to put plaintiffs on inquiry notice. Moreover, a plaintiff's duty to inquire is not dissipated merely because of a defendant's later refusal to acknowledge or own up to the alleged fraud. *See LC Capital,* 318 F.3d at 155 ("[R]eassuring statements will prevent the emergence of a duty to inquire or dissipate such a duty only if an investor of ordinary intelligence would reasonably rely on the statements to allay the investor's concern"); *Slavin v. Morgan Stanley &*

---

**14.** *See e.g.* Homestore Opp Br. at 15; iVillage Opp. Br. at 10–11; LifeMinders Opp. Br. at 8–9; LookSmart Opp. Br. 12; Openwave Opp. Br. at 14–15; Quokka Sports Opp. Br. at 17–18.

**15.** "[O]n a motion to dismiss, a court may consider . . . 'matters as to which judicial notice may be taken.'" *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002)

(quoting *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993)). The Court may take judicial notice of newspaper articles for the fact of their publication without transforming the motion into one for summary judgment. *See In re Sterling Foster & Co., Inc. Sec. Litig.,* 222 F.Supp.2d 312, 321 (E.D.N.Y.2002); *Schwenk v. Kavanaugh,* 4 F.Supp.2d 116, 118 (N.D.N.Y.1998).

*Co., Inc.,* 791 F.Supp. 327, 331 (D.Mass. 1992) (holding in a securities fraud case that "[defendant's] denial of wrongdoing should not have deterred this plaintiff from pursuing its inquiry into the matter where the plaintiff was on inquiry notice that it had been defrauded"); *see also Blue Cross of California v. Smithkline Beecham Clinical Laboratories, Inc.,* 108 F.Supp.2d 116, 124 (D.Conn.2000) (holding, in a common law fraud case, that statute of limitations would not be tolled simply because defendant denied any fraudulent acts); *Pocahontas Supreme Coal Co., Inc. v. Bethlehem Steel Corp.,* 828 F.2d 211, 218–219 (4th Cir.1987) (affirming dismissal of Sherman Act claims on grounds that statute of limitations would not be tolled simply because defendant "fail[ed] to own up to illegal conduct").

### D. The Doctrine of Equitable Tolling Does Not Apply to § 10(b) Claims

■ In the seminal decision of *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 363, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991) the Supreme Court unequivocally held that "the equitable tolling doctrine is fundamentally incon-sistent" with the statute of limitations structure applicable to § 10(b) claims.[16] Equitable tolling is inconsistent with the discovery period because if a defendant actively conceals a fraud, then plaintiff will not discover the facts suggesting the violation and the statute will not begin to run, making tolling unnecessary. *Dafofin Holdings S.A. v. Hotelworks.com, Inc.,* No. 00 Civ. 7861(LAP), 2001 WL 940632, at * 5 (S.D.N.Y. Aug.17, 2001) (Preska, J.). Equitable tolling is also fundamentally incon-sistent with the repose period because that limit is " 'clearly to serve as a cutoff' and it would have no significance as an outside limit if it could be tolled." *Friedman v. Wheat First Sec. Inc.,* 64 F.Supp.2d 338, 345 (S.D.N.Y.1999) (Ward, J.) (quoting *Lampf,* 501 U.S. at 363, 111 S.Ct. 2773). Thus, plaintiffs' contention that the doc-trine of equitable tolling would apply to render their belatedly filed claims timely is entirely without merit.[17]

### III. PLAINTIFFS HAVE FAILED TO ALLEGE FACTS INDICATING SCIENTER

■ Often lost in the enormous muddle of securities litigation is this most basic of

**16.** The Supreme Court in that decision was applying the 1– and 3–year structure that was changed by the Sarbanes–Oxley Act. However, the reasoning of the Supreme Court is also applicable to the 2– and 5–year structure which may govern some plaintiffs' claims; thus, the Court finds it controlling with respect to all Complaints.

**17.** Some courts in the Second Circuit have held that if an investor undertakes an inquiry upon being placed on inquiry notice of a probable fraud, but is frustrated in that inqui-ry by the defendants fraudulent concealment of the violation, then the doctrine of equitable tolling may apply even in a § 10(b) claim. *See Dodds,* 12 F.3d at 350; *Falik v. Parker Duryee Rosoff & Haft,* 869 F.Supp. 228, 233 (S.D.N.Y.1994) (Motley, J.) ("[E]quitable toll-ing stays the statute of limitations under Rule 10b–5 only as long as the defrauded party satisfies his duty to exercise reasonable dili-gence to discover the fraud.") Such reason-ing is, of course, entirely consistent with the ruling of the Supreme Court in *Lampf.* As explained in *LC Capital,* if an investor under-takes an inquiry once put on inquiry notice, the statute of limitations will begin to run only from the date that the investor "in the exercise of reasonable diligence *should* have discovered" the fraud. *LC Capital,* 318 F.3d at 154 (emphasis added) (quotation and cita-tion omitted). Where the defendant is fraud-ulently concealing the violation from the in-vestor's diligent inquiry, then the statute does not begin to run because a reasonable inves-tor can not be expected to discover the fraud. However, this argument is not available to these plaintiffs because they do not allege that they began an inquiry until after April 8, 2002, more than two years after they were placed on inquiry notice.

facts: not every knowing misrepresentation creates a legal cause of action under the securities laws. The requisite state of mind, or scienter, in an action under Section 10(b) and Rule 10b–5, that the plaintiff must allege is a purpose to harm by intentionally deceiving, manipulating or defrauding. *Kalnit v. Eichler,* 264 F.3d 131, 137 (2d Cir.2001); *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 1381, 47 L.Ed.2d 668 (1976) (same). Plaintiffs argue that the Complaints need not allege a purpose to harm investors. The rulings of the Supreme Court and the Second Circuit, however, show that the requisite state of mind for actionable securities fraud under Rule 10b–5 is the intent to deceive, manipulate or defraud, not merely the intent to utter an untruth. *See* 8 Louis Loss & Joel Seligman, *Securities Regulation* 3664 (3d ed.1991) (noting that the majority opinion in *Hochfelder* adopted a standard of "not merely knowing falsity but 'intent to deceive, manipulate or defraud' "). A "fraud" is a "knowing misrepresentation of the truth or concealment of a material fact to induce another to act to *his or her detriment.*" *Black's Law Dictionary* 670 (7th ed.1999) (emphasis added). Thus, an "intent to defraud" is the intent "to cause injury or loss to (a person) by deceit." *Black's Law Dictionary* 434 (7th ed.1999); *see also Websters Third New International Dictionary* 593 (1968) (defining "to defraud" as "to take or withhold from (one) some possession, right or interest by ... deception").

It is well settled that, "not every instance of financial unfairness constitutes fraudulent activity under § 10(b)." *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 174, 114 S.Ct. 1439, 1446, 128 L.Ed.2d 119 (1994) (quotation omitted). Misrepresentations with the purpose of causing loss to another deserving punishment by law and those involving acts addressed to business conscience which require the supervision of publicly appointed and elected regulators are not the same. Ethical violations in business transactions do not become legal causes if the law does not apply. While "Section 10(b) is aptly described as a catchall provision ... what it catches must be fraud." *Id.* at 174, 114 S.Ct. 1439 (quotation omitted); *see also Hart v. Internet Wire, Inc.,* 145 F.Supp.2d 360, 366 (S.D.N.Y.2001) ("A 10b–5 case requires intentional misconduct."). Succinctly stated, not every action deserving the punishment of conscience invokes the punishment of law.

The indiscriminate invocation of the word "fraud" permeates the Complaints without regard to the requirements that underlie such class actions as described in the securities laws and the Reform Act. The Reform Act requires that plaintiffs plead with particularity facts giving rise to a *strong* inference that the defendants had the requisite state of mind to cause harm to another when making the misrepresentations or omissions. 15 U.S.C. § 78u–4(b)(2). The plaintiffs have failed to allege facts which could give rise to any inference, let alone a strong one, of an intent on the part of the defendants to defraud them. To meet the requirements of the Reform Act, a complaint must "(1) allege facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness, or (2) allege facts to show that defendants had both motive and opportunity to commit fraud." *Rothman v. Gregor,* 220 F.3d 81, 90 (2d Cir.2000). Plaintiffs here have failed to do either.

**A. Plaintiffs Fail to Plead Facts Showing the Defendants Acted Recklessly**

Allegations, such as those at issue herein, that the "defendants should have anticipated future events [i.e. the collapse of the

Internet bubble] and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir.2000). Plaintiffs here do not dispute the accuracy of the factual materials contained in the reports; instead, they take issue with defendants *predictions* that the stock would increase 20% or more or between 10% and 20% in the next twelve months ("BUY" and "ACCUMULATE" ratings, respectively). The fact that the market turned sour causing these particular plaintiffs to lose money, as opposed to the multitude of individuals who made large fortunes while the bubble lasted, is a classic allegation of fraud by hindsight. Imposing a new duty after the fact on what disclosures are required does not support a cognizable securities fraud claim. *Id.*

### B. Plaintiffs Fail to Allege Facts Sufficient to Show That Defendants Had the Motive and Opportunity to Commit Fraud

■ Plaintiffs further fail to allege facts showing motive and opportunity to commit fraud. To plead motive, plaintiffs must assert that defendants have "benefitted in some concrete and personal way from the purported fraud." *Id.* at 307–308. To plead opportunity, plaintiffs must allege facts showing that defendants had "the means and likely prospect of achieving concrete benefits by the means alleged." *Id.* at 307. Neither allegations of motives possessed by many nor allegations of the motivation to receive fees for services or to maintain a professional relationship, suffice to establish motive under this test. *Zucker v. Sasaki*, 963 F.Supp. 301, 308 (S.D.N.Y.1997) (Kram, J.) ("[R]eceipt of compensation and the maintenance of a profitable professional business relationship ... does not constitute a sufficient motive for purposes of pleading scienter.").

Allegations that defendants sought to attract investment banking business from companies for which they issued reports and that defendant Blodget sought to increase his bonus compensation are insufficient as a matter of law to establish concrete and personal benefits. *See Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir.1995)(incentive compensation is not a basis for allegations of fraud). In *Ward v. UBS Painewebber*, No.02–3878 (JAP), 2003 WL 22340565, *——, slip op. at 9 (D.N.J.2003), the district court dismissed allegations substantially similar to those at issue here. In that case, plaintiffs alleged that an analyst established price targets which he knew that the stock would not reach, in order to attract investment banking business and to drum up publicity for the analyst himself. The district court there found such allegations insufficient to show the required concrete and personal benefit because such motives are shared by "every firm in the securities industry." *Id.* 2003 WL 22340565, *——, at 9.

If this Court were to accept the plaintiffs' allegations of scienter as adequate, it would essentially read the scienter element out of existence. All firms in the securities industry want to increase profits and all individuals are assumed to desire to increase their compensation. Allegations such as these are inadequate to plead motive to commit a fraud on the market or the public under the securities laws and the Reform Act and will not be endorsed by this Court.

It is also clear that defendants warned amply of the risks inherent in owning the stocks, including assigning each of the securities at issue a "D" rating, denoting the highest level of volatility. However, even such stocks are worth the risks to some investors.

## IV. LEAVE TO AMEND AGAIN IS DENIED

Plaintiffs have submitted the exact same language to be inserted in a further amendment to their Complaints as plaintiffs did in 24/7 and Interliant. The Court is unwilling to give them a "third bite" at the apple after it specifically instructed them on the requirements of proper pleading, especially when such an amendment would, as this Court has already described at length, be futile.

> In the continually shifting sands of plaintiffs' loss causation arguments, the ... plaintiffs seek to amend their Consolidated Amended Complaint yet again to add allegations that the price of [the securities] decreased more than certain internet stock indexes. Not only was this data available to plaintiffs years ago, but it utterly fails to address plaintiffs' deficiencies in pleading loss causation. The proposed allegations simply do not link any of the research reports to the decline in the price of [the securities]. The price of [the securities] fell as a result of the bursting of the bubble–even if at a faster pace than the average–and the proposed allegations do not provide any facts from which it can be inferred that the ... research reports were the cause of the decline.

*In re Merrill Lynch & Co., Inc.,* 273 F.Supp.2d at 393–394.

## CONCLUSION

For the reasons set forth above, the Complaints fail to state a claim principally because (1) there are no claims in the Complaints that the alleged misrepresentations or omissions proximately caused the losses claimed; additionally, (2) the Complaints are barred by the relevant statute of limitations; and (3) the Complaints fail to plead any facts giving rise to a strong inference of scienter. These reasons alone are adequate to merit dismissal of the Complaints with prejudice.

It is not strictly necessary to address the myriad pleading deficiencies of the Complaints. However, plaintiffs have repeatedly failed to cure the pleading defects despite having had ample opportunity to amend appropriately. Thus, the Complaints merit dismissal with prejudice because they fail to meet the essential pleading requirements of Fed.R.Civ.P. 9(b) and the Reform Act.

The Clerk is hereby directed to close all constituent cases relating to the 8 stocks here involved.[18]

So ordered.

---

**18.** Only the cases relating to the 8 remaining stocks captioned above are decided hereby. The litigations relating to securities other than those captioned above, including those originally denominated Phase I but not considered herein, are not decided by this Opinion.