**In re CREE, INC. SECURITIES LITIGATION**

**No. 1:03 CV 00549.**

United States District Court, M.D. North Carolina.

Aug. 27, 2004.

---

Jeffrey Dean Patton, Reginald F. Combs, Blanco, Tackabery, Combs & Matamoros, P.A., Winston–Salem, NC, Jay W. Eisenhofer, Sidney S. Liebesman, Grant & Eisenhofer, P.A., Wilmington, DE, J. David James, Smith James Rowlett & Cohen, Greensboro, NC, Sherrie R. Savett, Berger & Montague, P.C., Philadelphia, PA, David Garrett Schiller, Schiller & Schiller, PLLC, Raleigh, NC, Kenneth J. Vianale, Julie Prag Vianale, Vianale & Vianale, LLP, Boca Raton, FL, Marvin Schiller, Raleigh, NC, Deborah R. Gross, Office Of Bernard M. Gross, Philadelphia, PA, Christine M. Fox, Kaplan Fox & Kilsheimer, LLP, New York City, Edward G. Connette, III, Lesesne and Connette, Charlotte, NC, Samuel H. Rudman, David A. Rosenfeld, Mario Alba, Jr., Cauley, Geller, Bowman, Coates & Rudman, LLP Melville, NY, S. Gene Cauley, Darrin L. Williams, Randall K. Pulliam, Cauley, Geller, Bowman & Rudman, LLP, Little Rock, AR, for Plaintiffs.

Carl N. Patterson, Jr., Donald Hugh Tucker, Jr., Michael W. Mitchell, Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, Raleigh, NC, Bruce G. Vanyo, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, Gregory A. Harris, Nicholas I. Porritt, Wilson, Sonsini, Goodrich & Rosati, P.C., Reston, VA, Lyle Roberts, for Defendants.

## MEMORANDUM OPINION

BULLOCK, District Judge.

Plaintiffs bring this consolidated class action lawsuit against Defendant corporation Cree, Inc. ("Cree") and various Cree officers and directors, including F. Neal Hunter, Cynthia B. Merrell, John W. Palmour, Charles Swoboda, Calvin H. Carter, James E. Dykes, Dolph W. Von Arx, and Walter L. Robb (collectively "Defendants"). Plaintiffs allege that Defendants engaged in fraudulent business practices designed to artificially inflate Cree's stock price. Plaintiffs bring claims for securities fraud pursuant to Sections 10(b), 18, 20(a), and 20(A) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78r, 78t(a), and 78t–1(a), Rule 10b–5 promulgated under Section 10 of the Exchange Act, 17 C.F.R. § 240.10b–5, and Section 304 of the Sarbanes–Oxley Act of 2002, 15 U.S.C. § 7243. Before the court is Defendants' motion to dismiss the complaint as untimely and deficient under the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4 et seq. ("PSLRA"). Also before the court is Plaintiffs' motion to strike certain of Defendants' exhibits submitted in support of their motion to dismiss. For the following reasons, the court will grant Defendants' motion to dismiss without prejudice. The court also will grant Plaintiffs' motion to strike Defendants' Exhibits 8, 21–25, 30, and 47 attached to the Declaration of Nicholas I. Porritt in Support of Defendants' Motion to Dismiss. Plaintiffs' motion to strike Defendants' Exhibit 18 will be denied.

## FACTS

Cree, a North Carolina company headquartered in Durham, North Carolina, develops and markets products made from silicon carbide. The company is a leading manufacturer of semiconductors, transistors, and light-emitting diodes ("LEDs"). On June 12, 2003, Eric Hunter, a former Chief Executive Officer ("CEO") and co-founder of Cree, filed suit against Cree and various Cree executives, including his brother and co-founder, F. Neal Hunter ("Neal Hunter").[1] In his brief initial complaint, Eric Hunter sued Cree for securities fraud, violations of the whistle-blower provisions of Section 806 of the Sarbanes–Oxley Act of 2002, 18 U.S.C. § 1514A, and defamation. Cree's stock price fell 18.5% upon announcement of the suit.[2]

Four days after Eric Hunter filed his complaint, the first of nineteen securities fraud class action suits were filed against Cree. On November 25, 2003, the court held a hearing to consolidate the cases and name a lead plaintiff for the putative class. Louisiana Teachers' Retirement System was selected as lead plaintiff. The class has not been certified.

On January 16, 2004, Plaintiffs filed a Consolidated Class Action Complaint ("the complaint"). Plaintiffs seek to represent purchasers of Cree stock during an approximately four-year period from August 12, 1999 to June 13, 2003 (the proposed "class period"). The complaint alleges that throughout this period Defendants made numerous omissions and misleading statements in Cree's press releases and public filings. These allegations center on Cree's business relationships with six companies, some of which were owned or operated by other members of the Hunter family.

Round–Trip Transactions

Plaintiffs' round-trip allegations concern Cree's business dealings with Microvision, Inc. ("Microvision"), Spectrian Corporation ("Spectrian"), World Theatre, Inc. ("WTI"), Xemod, Inc. ("Xemod"), and Lighthouse Technologies Ltd. ("Lighthouse"). According to Cree's disclosures, Cree invested in these companies and entered into agreements to receive research and development ("R & D") funding from them. Plaintiffs contend that these agreements were in fact a method by which Cree "round-tripped" its own funds, improperly improving its financial performance by purchasing its own revenue and earnings.

For example, during the class period, Cree invested $12.5 million in Microvision, and Microvision agreed to fund $10 million worth of Cree R & D. Plaintiffs allege that Cree overpaid for its investment in Microvision pursuant to a secret agreement requiring Microvision to return the funds to Cree for R & D that Cree never performed. Plaintiffs support this claim with statements by an unnamed Microvision vice president primarily responsible for Microvision's R & D and a former Microvision project manager.

In addition to alleging round-trip transactions involving Microvision, Plaintiffs claim that Cree used its relationship with Spectrian to inflate its stock price and

1. Eric Hunter served as Cree's President and CEO from 1987 to 1994 and was Chairman of Cree's Board of Directors until 1995. When Eric Hunter filed his complaint against Cree, he was employed part-time as a Senior Technology Advisor at Cree, earning an annual salary of $15,000 as well as stock options. (Decl. of Nicholas I. Porritt Supp. Defs.' Mot. to Dismiss, Ex. 10, Sept. 30, 1999, Proxy Statement, at 12–13; Ex. 41, *Hunter v. Cree*, 1:03CV00540, ¶ 1.)

2. Ultimately Eric Hunter voluntarily dismissed his securities fraud claims and settled the remainder of his lawsuit.

financial outlook. In December 2000, Cree acquired UltraRF, a subsidiary of Spectrian, for $100 million. Cree allocated $81.6 million of the purchase price to goodwill and the remainder to UltraRF's tangible and specific intangible assets. At the time of purchase, Cree and Spectrian also entered into a development agreement for $2.4 million in R & D funding and a Purchase and Supply Agreement under which Spectrian would buy $58 million worth of Cree products over two years. In October 2001 and again in March 2002, the parties modified the Purchase and Supply Agreement to reduce Spectrian's obligations. Subsequently, Cree wrote down $76.5 million of UltraRF's assets and goodwill as impaired. The Purchase and Supply Agreement ultimately terminated in November 2002 upon a $5 million payment from Spectrian.

According to Plaintiffs, Cree's deal with Spectrian was secretly designed as another way to round-trip Cree's funds. The complaint alleges that Cree overpaid to acquire UltraRF and that the development and supply agreements were phony because "Cree had no experience manufacturing" products for Spectrian, "knew it did not have the ability to perform the R & D contemplated in Cree's agreements with Spectrian," and never actually conducted R & D for Spectrian. (Compl. ¶ 168.) To support these assertions, Plaintiffs reference several sources, including two employees and Eric Hunter.

Plaintiffs allege that Cree continued to manipulate its financials by engaging in comparable round-trip schemes with WTI, Xemod, and Lighthouse. In its public filings, Cree disclosed its investments in these companies and identified them as sources of R & D funding. Cree also subsequently disclosed substantial write-downs of each of these investments. However, Plaintiffs maintain that Cree failed to disclose facts showing that these business ventures were undertaken to perpetuate the recycling of Cree's revenue and earnings. The complaint identifies no documents or sources to support Plaintiffs' claims regarding WTI, Xemod, or Lighthouse.

Channel–Stuffing and Fake Equipment Sales to C3

Finally, Plaintiffs aver that Cree engaged in improper business practices with respect to C3. C3 manufactures artificial gemstones made of silicon carbide crystals. The company was founded by Eric and Jeff Hunter, brothers of Cree CEO Neal Hunter, and Cree and its directors have invested in C3.[3]

Plaintiffs base their allegations regarding C3 largely on information gleaned from Eric Hunter's complaint. Plaintiffs claim that Neal Hunter contracted to supply C3 with all the crystals Cree could manufacture, regardless of C3's needs, subject to an undisclosed right of return. Under the alleged scheme, Cree shipped C3 crystals far in excess of C3's demand, and C3 could reject the crystals even if they conformed to C3's specifications. However, to prevent Cree from taking a reserve or impairment charge on sales it already had booked, the companies allegedly agreed that the rejected product would be stored in C3's facilities. Plaintiffs contend that a former Cree process engineer who worked as the lead manager on the C3 product line and a former C3 vice president of marketing can substantiate these "channel stuffing" allegations.

Plaintiffs also aver that Cree exploited its relationship with C3 by booking a pho-

---

**3.** In August 1998, Cree owned 1.7% of C3 stock, and Defendants Neal Hunter, Palmour, Carter, Dykes, and Von Arx owned a total of 3.3% of C3 stock. By the beginning of the class period, Cree had sold all of its C3 stock, and Cree officers owned less than 1.5% of C3 stock.

ny sale of crystal-growing equipment. In its 1998 and 1999 10-Ks, Cree disclosed that C3 purchased crystal growers from Cree for $6.2 million. Cree indicated that the growers would remain at Cree under C3's ownership and that title to the growers would be transferred to Cree when the machines had fully depreciated. In 2000, Cree disclosed that it had repurchased the growers, the price of which would be offset by existing amounts due from C3 and $3.9 million in credit from Cree to C3. Plaintiffs claim that this transaction was fraudulent because a true sale was never effectuated. Instead, according to Plaintiffs, at the time of the supposed sale, Cree secretly agreed to repurchase the growers once it realized the income-boosting effects of booking the sale and reducing its depreciation expenses. By repurchasing the growers with credit, Cree was able to facilitate additional forced sales of crystals to C3. Plaintiffs also maintain that Cree's R & D agreement with C3, pursuant to which Cree received $2.4 million, was phony because no R & D was earmarked for C3. Plaintiffs rely on Eric Hunter's complaint as the source for these allegations.

## DISCUSSION

### I. *Timeliness of Plaintiffs' Claims*

■ Defendants first assert that the statute of limitations bars the complaint because Plaintiffs failed to file their claims in a timely manner. In securities fraud cases, the statute of limitations is triggered when a reasonable investor would have inquiry notice of the possibility of fraud.[4] *See Brumbaugh v. Princeton Partners,* 985 F.2d 157, 162 (4th Cir.1993). Defendants contend that Cree's public filings and seven articles published from July 30, 1999, to February 5, 2001, put Plaintiffs on inquiry notice of their claims. The articles, submitted as exhibits to the Declaration of Nicholas I. Porritt in Support of Defendants' Motion to Dismiss, discuss Cree's relationships with the companies named in Plaintiffs' complaint. Two articles were posted on an Internet website called "TheStreet.com", two were published in the Raleigh *News & Observer* newspaper, two were taken from the *Wall Street Journal,* and one appeared in *Fortune Magazine.* One author wrote three of the articles, and another author wrote two of the remaining articles. Four of the seven articles discuss allegations leveled at Cree by a short seller of Cree stock, and some contain refutations of the allegations by officers and directors of Cree. According to Defendants, these articles demonstrate that a reasonable investor would know of possible fraud at Cree more than two years before Plaintiffs filed their complaint.

4. Prior to passage of the Sarbanes–Oxley Act in 2002, a plaintiff's claim was time-barred if not filed within one year of discovery of the facts constituting the violation. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 364, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). Section 804 of the Sarbanes–Oxley Act of 2002 has expanded the statute of limitations to two years after discovery of the facts constituting the violation. 28 U.S.C. § 1658(b). Section 804 applies to securities fraud claims commenced on or after July 30, 2002. *See id.,* Historical and Statutory Notes. Defendants argue that Plaintiffs have been on inquiry notice of their claims since February 5, 2001. If Plaintiffs had inquiry notice at this time, their claims would expire in February 2002, before Sarbanes–Oxley took effect. *See Glaser v. Enzo Biochem, Inc.,* 303 F.Supp.2d 724, 733–34 (E.D.Va.2003). If Plaintiffs were placed on inquiry notice with the filing of Eric Hunter's complaint, as they contend, then the statutory period is governed by Sarbanes–Oxley and the claims are timely. The court will not resolve the issue of timeliness in this motion to dismiss because the documents Defendants claim establish inquiry notice are not properly before the court at this time.

In response, Plaintiffs have moved to strike these articles, reasoning that they are not properly before the court in considering a motion to dismiss.[5] Pursuant to Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss, the court accepts as true all well-pleaded allegations and views the complaint in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). As a general rule, the court considers only the facts alleged on the face of the complaint. *See* Fed.R.Civ.P. 12(b) (when "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56"). However, the court may consider documents extraneous to the complaint if they are "integral to and explicitly relied on in the complaint" and if the authenticity of the documents is not in issue. *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir.1999). *See Tatum v. R.J. Reynolds Tobacco Co.*, 294 F.Supp.2d 776, 781–82 (M.D.N.C.2003) (reasoning that because complaint did not reference documents at issue, documents should be excluded from consideration on a motion to dismiss under *Phillips* ); *In re USEC Sec. Litig.*, 190 F.Supp.2d 808, 815 (D.Md.2002) (noting in securities fraud class action that "the Court will consider the facts stated in the complaint, as well as the documents referred to in the complaint and relied upon by plaintiff in bringing the action"); *In re First Union Corp. Sec. Litig.*, 128 F.Supp.2d 871, 883 (W.D.N.C.2001) ("In securities fraud actions, courts will also examine the other information that was publicly available to reasonable investors at the time the defendant made statements plaintiffs alleged were fraudulent, including documents or articles cited in the complaint, SEC filings, press releases, stock price tables, and other material on which plaintiff's allegations necessarily rely." (internal quotations omitted)). Plaintiffs have not named or discussed any of Defendants' proffered articles in their complaint.

Defendants reason that the court may consider the articles regardless of whether they are specifically mentioned in the complaint. In support of their position, Defendants contend that the complaint references and relies on the articles as the basis for the claims, that the articles may be considered in a "fraud on the market" case such as this one, and that the court should take judicial notice of the articles at this stage in the proceedings. The court does not find Defendants' arguments persuasive.

Defendants first suggest that Plaintiffs reference the articles in general statements throughout the complaint. For example, the complaint's introduction states that Plaintiffs' allegations are based on "press releases, public statements, news articles, securities analysts' reports and other publications disseminated by or concerning Cree." (Compl.Introduction.) The complaint also indicates that "[a]t various times during the Class Period, analysts and journalists questioned certain Cree transactions" (Compl.¶ 10.), and that Plain-

---

5. Plaintiffs do not contest Defendants' other exhibits submitted in support of the motion to dismiss. The non-controverted exhibits consist mainly of SEC filings and other public statements by Cree. *See Kramer v. Time War-* *ner Inc.*, 937 F.2d 767, 774 (2d Cir.1991) (holding that courts may take judicial notice of public disclosure documents filed with the SEC).

tiffs, along with the rest of the market, "promptly digested current information regarding Cree from all publicly available sources." (Compl.¶ 325.) Defendants posit that these oblique references to media coverage of Cree demonstrate that Plaintiffs relied on Defendants' seven exhibits. In addition, Defendants argue that the articles are integral to the complaint because some contain speculation concerning related-party transactions and channel-stuffing at Cree. Though Plaintiffs have not "explicitly relied" on the articles in their complaint, Defendants essentially ask the court to look behind the complaint to find such reliance. This is not proper on a motion to dismiss.[6]

Similarly, Defendants allege that because Plaintiffs bring their claims pursuant to a "fraud on the market" theory, the court may consider any information available to the market at the time of the alleged fraudulent misconduct. However, *Phillips*, which instructs that only documents "integral to and explicitly relied on in the complaint" can be considered on a

motion to dismiss, was a fraud on the market case. *Phillips*, 190 F.3d at 617–618. Though the *Phillips* court reviewed a newspaper article unattached to the complaint, the statement in the article was the basis for the plaintiffs' claims and was explicitly relied on in the complaint. *Id.*[7]

Finally, at this stage of the litigation, the court also declines to take judicial notice of the articles to determine as a matter of law whether the market was aware of Cree's potential fraud. *See* Fed.R.Evid. 201(b) (providing that a court in its discretion may take judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"). Should the case progress to summary judgment Defendants will have the opportunity to present these articles and their timeliness argument. Construing Cree's public filings in the light most favorable to Plaintiffs, the court will deny Defendants'

---

**6.** The court recognizes that a plaintiff should not be permitted to evade a motion to dismiss by intentionally failing to acknowledge a "plethora of public information [that] would have required even a *blind, deaf, or indifferent* investor to take notice of the purported alleged 'fraud.' " *In re Merrill Lynch & Co., Inc. Res. Reports Sec. Litig.*, 289 F.Supp.2d 416, 425 (S.D.N.Y.2003) (emphasis in original) (considering "overwhelming and widely dispersed collection of press articles and public speeches by top securities regulatory officials" in ruling on motion to dismiss securities fraud class action suit). However, it is difficult to conclude that the seven articles at issue in this case constituted such a plethora of information as to be necessarily integral to the complaint, especially given that two articles were published in a local newspaper in Raleigh and two were taken from an Internet website. Defendants may present evidence that the market was aware of these articles and assert their sufficiency to establish inquiry notice on a motion for summary judgment.

**7.** Moreover, many of the securities fraud cases Defendants cite to support their "fraud on the market" argument are inapposite. *See, e.g., Morris v. Wachovia Sec., Inc.*, 277 F.Supp.2d 622, 640 (E.D.Va.2003) (extrinsic documents considered were specifically cited in complaint); *In re First Union Corp. Sec. Litig.*, 128 F.Supp.2d 871, 883 (W.D.N.C. 2001) (articles and reports at issue referenced in the complaint); *In re FAC Realty Sec. Litig.*, 990 F.Supp. 416, 420 (E.D.N.C.1997) (court reviewed documents "referenced by, and integral to, the complaint"); *Westinghouse Elec. Corp. v. '21' Int'l Holdings, Inc.*, 821 F.Supp. 212, 222–23 (S.D.N.Y.1993) (court ruling on summary judgment, not motion to dismiss). *But see In re Merrill Lynch*, 289 F.Supp.2d at 425 (considering "overwhelming and widely dispersed collection of press articles and public speeches by top securities regulatory officials" in ruling on motion to dismiss). Given the language in *Phillips* and the significantly different facts, the court does not find *Merrill Lynch* persuasive.

motion to dismiss the complaint as time-barred. Plaintiffs' motion to strike Defendants' Exhibits 8, 21–25, and 30 will· be granted.[8]

## II. *Plaintiffs' 10(b) and Rule 10(b)–5 Claims*

■ Section·10(b) of the Exchange Act prohibits any person

[t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device· or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b–5, promulgated under Section 10(b), provides:

It shall be unlawful for any person ∴.. [t]o make any untrue statement of material fact or to· omit tò state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, ... in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5. To state a claim under Section 10(b) and Rule 10b–5, a plaintiff must plead that "(1) the defendant made a false statement or omission of material fact (2) with scienter (3) upon which the plaintiff justifiably relied (4) that proximately caused the plaintiff's damages." *Phillips*, 190 F.3d at 613 (internal quotation marks omitted).

■ Allegations of securities fraud also must meet the heightened pleading standards of the PSLRA. The PSLRA requires that the complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation· regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts upon which that belief is formed." 15 U.S.C. § 78u–4(b)(1).[9] The statement or omission at issue must be based in fact, demonstrably true or false, and material to a reasonable investor. *See Ottmann v. Hanger Orthopedic Group, Inc.*, 353 F.3d 338, 342–43 (4th Cir.2003). *See also Adams v. Kinder–Morgan, Inc.*, 340 F.3d 1083, 1102–03 (10th Cir.2003) ("In deciding whether the factual allegations support a reasonable belief that fraud occurred, courts should evaluate the facts alleged as a whole, evaluating. the level of detail, number and coherence and plausibility of

---

**8.** The court also grants Plaintiffs' motion to strike·Defendants' Exhibit 47, but denies the motion as to Exhibit 18. · Exhibit 47 is a press release regarding the settlement of Eric .Hunter's claims against Cree. It is not referenced in or integral to the complaint and thus will not be considered. Exhibit 18 is a˙ press release detailing Cree's investment in Xemod. Though the complaint does not specifically name this press release, it references the dollar figures contained therein, so the court will consider this exhibit in ruling on the motion to dismiss.

In addition, the court will not consider Plaintiffs' Exhibit A attached to the Declaration of Reginald F. Combs in Support of Plaintiffs' Brief in Opposition to Defendants'

Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint. This exhibit is a letter to the SEC from counsel for Eric Hunter. It was not attached to or referenced in the complaint and thus is not properly before the court at this time.

**9.** Federal Rule of Civil Procedure 9(b), which mandates that fraud be pled with particularity, is also relevant to this analysis, although the Fourth Circuit has stated that "the heightened pleading requirements of the PSLRA supersede the requirements of Federal Rule of Civil Procedure 9(b) in securities fraud cases, at least with respect to scienter." *Ottmann v. Hanger Orthopedic Group, Inc.*, 353 F.3d 338, 344 n. 4 (4th Cir.2003).

the allegations ... whether the sources of the facts are disclosed and the reliability of those sources; and any other factors").

In addition, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). *See Phillips*, 190 F.3d at 621 (noting that the complaint must contain "a substantial factual basis in order to create a strong inference that the defendant acted with the required state of mind." (internal quotations omitted)). The scienter element is met when a plaintiff pleads facts demonstrating the defendant's intentional or reckless conduct.[10] *Ottmann*, 353 F.3d at 344. A "flexible, case-specific analysis" guides the court in determining the sufficiency of a plaintiff's scienter allegations. *Id.* at 345. A complaint that fails to comply with these heightened pleading requirements must be dismissed. *See* 15 U.S.C. § 78u–4(b)(3)(A). Among other reasons, Defendants seek to dismiss Plaintiffs' complaint for failure to plead with particularity and failure to plead scienter under the PSLRA.

A. Pleading with Particularity

Plaintiffs sufficiently identify a series of Cree's public statements and filings they believe to be false and misleading. Specifically, Plaintiffs take issue with Cree's 10–Ks from 1999 to 2002, 10–Qs for each quarter from 2000–2003, the 1999, 2000, and 2001 proxy statements, the December 1999 and January 2000 registrations, the January 2000 prospectus, and various Cree press releases, conference calls, and public statements from October 1999 to May 2003. Plaintiffs explain that each of the referenced statements fails to disclose Cree's allegedly improper business practices. However, under the heightened pleading requirements of the PSLRA, Plaintiffs must provide some factual basis for the improper practices they claim occurred. To that end, Plaintiffs rely on two sources of information, a series of confidential witnesses and Eric Hunter. Defendants assert that the information these sources provide is too vague and conclusory to meet the particularity requirements of a Section 10(b) claim.

As a general matter, a plaintiff may rely on confidential sources to substantiate his claims for securities fraud. *See Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir.2000). A source need not be named if the complaint provides sufficient facts to support the source's allegations. *Id.* These facts must raise the probability that a person in the source's position would possess the information supplied. *See ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 352 (5th Cir.2002). To evaluate whether a confidential source is relaying first-hand knowledge or merely speculating, the court examines "the level of the detail provided by the confidential sources, the corroborative nature of the other facts alleged (including from other sources), the coherence and plausibility of the allegations, the number of sources, the reliability of the sources, and similar indicia." *In re Cabletron Sys., Inc.*, 311 F.3d 11, 29–30 (1st Cir.2002); *see Kinder–Morgan*, 340 F.3d at 1103 ("[W]here a plaintiff does not identify the sources of the facts stated in the complaint, the facts alleged in an information

---

10. The Fourth Circuit defines recklessness as "an act 'so highly unreasonable and such an extreme departure from the standard of ordinary care as to present a danger of misleading the plaintiff to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 621 (4th Cir.1999) (quoting *Hoffman v. Estabrook & Co., Inc.*, 587 F.2d 509, 517 (1st Cir.1978)).

and belief complaint will usually have to be particularly detailed, numerous, plausible, or objectively verifiable by the defendant before they will support a reasonable belief that the defendant's statements were false or misleading.").

Though Plaintiffs' allegations are far from comprehensive, some of the claims are sufficiently particular to survive a motion to dismiss. For example, Plaintiffs allege that Cree's R & D agreement with Microvision was a sham that enabled Cree to fraudulently reduce its research expenditures. To substantiate this claim, Plaintiffs reference a vice president of Microvision responsible for R & D who allegedly was "intimately involved with all internal and external research projects." (Compl.¶ 55.) This confidential witness disclosed that Cree performed no R & D for Microvision, that it was "obvious" Microvision would not receive R & D from Cree, and that he and his technical evaluators were excluded from all projects involving Cree. (Compl.¶ 56.) Plaintiffs seek to corroborate this information by citing an unnamed Microvision project manager and Eric Hunter as additional sources with knowledge of the sham. (Compl.¶ 57.)

To support their allegations of channel-stuffing, Plaintiffs rely on the former Cree lead process engineer for the C3 product line. This confidential witness informed Plaintiffs that Cree products were rejected by C3 and stored in C3's facilities to prevent Cree from taking a reserve or impairment charge for the oversupply. (Compl.¶ 74.) A former C3 vice president of marketing with check-writing authority also allegedly indicated that C3 was buying crystals for the purpose of "feeding Cree" and "spend[ing] money like 'drunken sailors' by regularly writing checks to Cree for $200,000–$300,000." (Compl.¶ 73.)

■ Though the above allegations could be considerably stronger, the witnesses'

information, job titles, and job descriptions sufficiently support the probability that the sources have first-hand knowledge of the transactions at issue. *See Cabletron,* 311 F.3d at 30 (indicating that complaint met particularity requirement based on the accounts of multiple anonymous employees familiar with the alleged activities); *In re Rhythms Sec. Litig.,* 300 F.Supp.2d 1081, 1089 (D.Colo.2004) ("Here, the information attributed to sources described as an 'operations consultant,' an 'employee who worked in the Operations Reporting Group,' an 'internal application support employee' ... are sufficiently specific to support the probability that the employees possessed the information alleged."). However, not all of Plaintiffs' allegations meet the particularity requirement. For instance, Plaintiffs' claim regarding Cree's secret agreement to repurchase crystal-growing equipment from C3 is supported only with general statements such as "according to Eric Hunter," and "as explained by Eric Hunter." (Compl.¶¶ 75–76.) Plaintiffs do not allege the basis for Eric Hunter's knowledge of this agreement, such as his brother, another insider, a document, or any other source. Eric Hunter was not an officer or director of Cree when the alleged fraud occurred, and Plaintiffs do not allege that Eric Hunter was actively involved in Cree management at that time. Though some weight should be accorded to the fact that Eric Hunter is the co-founder of Cree and the brother of defendant Neal Hunter, Plaintiffs have not sufficiently shown that Eric Hunter was an "insider" at Cree during the class period.

Plaintiffs also fail to supply information on which the court could infer Eric Hunter's first-hand knowledge. The allegations are void of details such as whether the agreement was verbal or written, when it took place, and who was involved. This

lack of specificity, as well as Plaintiffs' failure to provide a basis for Eric Hunter's knowledge, renders allegations regarding the "secret" repurchase agreement deficient. *See In re Vantive Corp. Sec. Litig.,* 283 F.3d 1079, 1091 (9th Cir.2002) (noting that plaintiffs in securities fraud case failed to allege "secret" meetings and agreements with adequate specificity); *In re Northpoint Communications Group, Inc. Sec. Litig.,* 221 F.Supp.2d 1090, 1098 (N.D.Cal.2002) (recognizing in securities fraud case that "where the nexus between a [confidential] witness's duties and his or her allegations is less evident, the absence, [sic] of specific detail going to a basis of knowledge is more troublesome—and saps the allegations of their strength").

Similarly, Plaintiffs neglect to provide a single document or source to support allegations of Cree's improper transactions with WTI, Xemod, and Lighthouse. Instead, Plaintiffs boldly claim that "[t]he allegations regarding Cree's round-trip deals with WTI, Xemod and Lighthouse are based on Hunter's disclosure that Cree has 'engaged in a *series* of undisclosed corporate activities and other acts in violation of the federal securities' [sic] and evidence that Cree had engaged in the same fraudulent conduct with Microvision, Spectrian and C3." (Pls.' Br. Opp'n Defs.' Mot. Dismiss Pls.' Consolidated Class Action Compl. at 22 (emphasis in original) (internal citations omitted).) This type of pleading clearly is not adequate to meet the demanding requirements of the PSLRA. *See ABC Arbitrage,* 291 F.3d at 360 (determining that plaintiffs could not allege defendants' fraud in June or July 1998 on the basis of alleged overstatements in 1997); *Johnson v. Tellabs, Inc.,* 303 F.Supp.2d 941, 960 (N.D.Ill.2004) (disregarding allegations of fictitious sales in securities fraud complaint because "[t]his bare-bones allegation without any particularized facts [-] the who, what, when or

where [-] does not meet the mandates of the PSLRA"). Many of Plaintiffs' allegations concerning Spectrian also fall short on the detail necessary to survive a motion to dismiss. However, given that Plaintiffs' complaint cannot meet the scienter requirement discussed immediately below, Plaintiffs will have another opportunity to state all of their claims with particularity under the PSLRA.

**B. Scienter Requirement**

■ In addition to attacking the complaint's particularity, Defendants challenge Plaintiffs' allegations of scienter. As discussed above, to state a claim for securities fraud, Plaintiffs must plead facts giving rise to a strong inference that each Defendant acted consciously or recklessly to defraud investors. *See* 15 U.S.C. § 78u–4(b)(2); *Ottmann,* 353 F.3d at 344. Mere negligence will not give rise to liability. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 215, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). To decide whether Plaintiffs have fulfilled the scienter requirement, courts examine the claims "in their entirety ... 'without regard to whether [the] allegations fall into defined, formalistic categories such as motive and opportunity.'" *Ottmann,* 353 F.3d at 345 (quoting *City of Philadelphia v. Fleming Cos., Inc.,* 264 F.3d 1245, 1263 (10th Cir.2001)). Conclusory allegations of "knowing" or "reckless" conduct are insufficient to make the requisite showing. *Smith v. Circuit City Stores, Inc.,* 286 F.Supp.2d 707, 714–15 (E.D.Va.2003).

■ Though some of Plaintiffs' claims regarding Cree's improper business practices may have been alleged with sufficient particularity to raise an inference that they occurred, none of the allegations raises a strong inference that Defendants acted with scienter. Not one of Plaintiffs' confidential witnesses provides any infor-

mation about how the individual Defendants were involved in the alleged schemes or how each Defendant knew of the purported fraud. The court cannot infer the Defendants' state of mind based on confidential sources' job titles or descriptions. *See In re Apple Computer, Inc., Sec. Litig.,* 243 F.Supp.2d 1012, 1027 (N.D.Cal. 2002) (refusing to credit confidential witness allegation of defendant's scienter because witness's status as vice president, without more, was insufficient basis for knowledge); *Berger v. Ludwick,* 2000 WL 1262646, at *6 (N.D.Cal.2000) (rejecting plaintiffs' securities fraud allegations in part because "[p]laintiffs seek to have the readers assume that because Bleier was a product manager for a product, all of his conclusory statements are enough to infer *defendants*' state of mind") (emphasis in original). Likewise, Plaintiffs' claim that the fraud "was well-known within Cree" (Compl.¶ 62.) is too general to show that Defendants had knowledge. *See Druskin v. Answerthink, Inc.,* 299 F.Supp.2d 1307, 1333 (S.D.Fla.2004).

Further, though Plaintiffs rely on Eric Hunter's claims that the improper practices "[were] negotiated at the highest levels of Cree," (Compl.¶ 60.), and that some transactions were orchestrated by Neal Hunter, these bare allegations do not satisfy the standard. Eric Hunter was not an executive at Cree during the purported fraud. Plaintiffs provide no facts concerning Hunter's basis of knowledge except his status as a Cree CEO significantly before the class period and his family relationship to the current CEO. Though these facts may be compelling when combined with detailed information about how or when the Defendants knew of the schemes, standing alone they do not raise a strong inference of scienter. *See Krim v. Coastal Physician Group, Inc.,* 81 F.Supp.2d 621, 632 (M.D.N.C.1998) (rejecting securities fraud complaint replete with broad allega-

tions that defendants "knowingly or recklessly engaged in acts" as insufficient to show scienter).

In addition, Plaintiffs cannot show scienter by alleging that the misstatements at issue were the collective actions of the individual Defendants directly involved in the daily business of Cree. Some courts have allowed plaintiffs to utilize this method of pleading scienter, known as the "group pleading doctrine." However, this practice is inconsistent with the particularity requirements of the PSLRA, and in the Fourth Circuit "[s]uch pleading practice is insufficient .... The burden rests on plaintiffs to 'enable a particular defendant to determine with what it is charged.'" *Juntti v. Prudential–Bache Sec., Inc.,* 993 F.2d 228, 1993 WL 138523, at *2 (4th Cir.1993) (Table) (quoting *Hoover v. Langston Equip. Assocs., Inc.,* 958 F.2d 742, 745 (6th Cir.1992)); *see Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.,* 365 F.3d 353, 365 (5th Cir.2004) ("[W]e do not construe allegations contained in the Complaint against the 'defendants' as a group as properly imputable to any particular individual defendant unless the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded."). Similarly, Plaintiffs cannot claim that the individual Defendants' titles or positions at Cree establish that they must have known of the alleged fraud. *See Smith,* 286 F.Supp.2d at 715 (discrediting plaintiffs' attempt to show scienter through defendants' access to confidential information, status as senior officers, and interactions with other executives); *In re First Union,* 128 F.Supp.2d at 888 (rejecting plaintiff's claim that "because of their positions as corporate officers, defendants must have known of the allegedly false and misleading nature of the alleged misstatements").

Plaintiffs also seek to show scienter by alleging Defendants' possible motives for defrauding Cree's investors. Plaintiffs note that executive compensation at Cree was based on the company's meeting performance goals and earnings targets and that Cree rewarded directors with stock options. (Compl.¶ 309.) To illustrate that Cree's compensation system provided incentive for Defendants to commit fraud, the complaint includes a chart showing that Cree met or exceeded analysts' expectations for each quarter in which the alleged fraud was occurring. (Compl. at 29.) Further, Plaintiffs believe that Defendants were motivated to meet analysts' expectations not only for their personal gain but also to ensure that Cree's secondary stock offering was successful. Though these motives may be probative when combined with other indicia of intent, they are attributable to corporate officers generally, and as such are insufficient in themselves to establish scienter. *See Phillips,* 190 F.3d at 623 (reasoning that "allegations [that] pertain to motivations common to every [corporation] cannot demonstrate scienter"); *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 54 (2d Cir.1995) (noting that plaintiffs could not show scienter by relying on allegations that officers would increase their compensation with an inflated stock price); *Melder v. Morris,* 27 F.3d 1097, 1102 (5th Cir. 1994) (indicating that a motive to inflate stock prices to successfully complete a public offering is insufficient to meet the scienter requirement); *Answerthink,* 299 F.Supp.2d at 1334 (finding that motivation to create "the illusion that [defendant] was meeting analysts' expectations in order to attract a buyer" was insufficient to contribute to an inference of wilfulness or recklessness).

The individual Defendants' stock sales are another basis on which Plaintiffs seek to fulfill the scienter requirement. Plaintiffs claim that from August 1999 to June 2003, Defendants sold 1,723,624 shares of common stock for a total of $64,637,328.00. (Compl.¶ 312.) The complaint includes a chart showing the number of shares sold, the price, and the amount earned by each Defendant during the approximately four-year class period. (Compl. at 132.) Plaintiffs make much of the fact that Neal Hunter sold stock throughout the class period for a total profit of $27,944,400.00. (Compl. at 133.)

Allegations of insider trading can support a strong inference of scienter if the trades are unusual in timing or amount. *Greebel v. FTP Software, Inc.,* 194 F.3d 185, 197 (1st Cir.1999) ("Unusual trading or trading at suspicious times or in suspicious amounts by corporate insiders has long been recognized as probative of scienter."). Insider trading is suspicious when it is dramatically different from prior trading practice and designed to maximize personal benefit from inside information. *See Ronconi v. Larkin,* 253 F.3d 423, 435 (9th Cir.2001). In this case, though the total profit and volume of trading are significant, the complaint does not provide enough factual information about the trades to show that they are unusual or suspicious. Plaintiffs do not provide Defendants' prior trading history or indicate the percentage of holdings sold during the class period. Further, Plaintiffs neglect to show that the trades were made at times designed to maximize Defendants' personal benefit. In fact, Plaintiffs' chart demonstrates that many of the sales were made when the stock was selling at comparatively low prices. (Compl. at 312 (reflecting that Defendants sold only 213,124 of the 1,723,624 shares at the stock's highest price range of $100.00 to $148.52).) To support a strong inference of scienter, the insider trades Plaintiffs allege must be unusual or suspicious in context. Allega-

tions of heavy trading or large profits, without further information, do not satisfy the scienter requirement. *See In re First Union,* 128 F.Supp:2d at 897.

 Finally, Plaintiffs aver that Defendants violated generally accepted accounting principles ("GAAP") by improperly booking phony sales and receiving funds pursuant to sham R & D agreements. Violations of GAAP may support an inference of scienter when combined with evidence of fraudulent intent. *See Novak,* 216 F.3d at 309. Because Plaintiffs have not pled sufficient facts to infer that many of the fraudulent transactions took place or that Defendants acted with scienter in accounting for them, they cannot rely on GAAP allegations to sustain their claim.

In short, whether their scienter allegations are considered collectively or individually, Plaintiffs have failed to plead that any Defendant knew of the improper business practices and intentionally or recklessly made material misstatements given that knowledge. In many instances, Plaintiffs also have failed to allege fraud with particularity. These defects render the complaint deficient under the strict requirements of the PSLRA. As a result, Plaintiffs' Section 10(b) and Rule 10b–5 claim will be dismissed.[11]

### III. *Section 20(a) and Section 20(A) Claims*

 Counts II and III of the complaint allege violations of Section 20(a) and Section 20(A) of the Exchange Act. Section 20(a) imposes liability on "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder" unless the controlling person acted in good faith and did not induce the viola-

tion. 15 U.S.C. § 78t(a). Section 20(A) allows a private right of action for purchasers and sellers of securities who trade contemporaneously with an insider possessing material nonpublic information. *See* 15 U.S.C. § 78t–1(a). To state a claim pursuant to Section 20(a) or Section 20(A), Plaintiffs must plead a predicate violation of the Exchange Act. *See In re E.Spire Communications, Inc. Sec. Litig.,* 127 F.Supp.2d 734, 750 (D.Md.2001) (dismissing plaintiff's Section 20(a) claim for failure to allege a "primary violation" of Section 10(b) and Rule 10b–5); *In re MicroStrategy,* 115 F.Supp.2d at 662 (acknowledging that predicate violation is needed to state a Section 20(A) claim). Because Plaintiffs have not stated a claim for securities fraud under Section 10(b) and Rule 10b–5, their Section 20(a) and Section 20(A) claims must be dismissed.

### IV. *Section 18 and Sarbanes–Oxley Act Claims .*

Plaintiffs bring claims pursuant to Section 18 of the Exchange Act and Section 304 of the Sarbanes–Oxley Act of 2002. Under Section 18, a person who makes a materially false or misleading statement in a document filed with the SEC is liable for damages to any person who relied on the misstatement in purchasing or selling a security at a price affected by the misstatement. 15 U.S.C. § 78r(a). Plaintiffs attempt to state a Section 18 claim by asserting that they "and the other members of the Class read and relied upon each of the Form 10–K's and the Registration Statements for Cree's 1999 and 2000 offerings not knowing that they were false and misleading." (Compl.¶ 352.) Defendants contend that because "plaintiffs believe that there are thousands of members in the proposed Class" (Compl.¶ 315),

---

11. Given that Plaintiffs' complaint cannot be saved from dismissal, Defendants' other arguments regarding the complaint's deficiency will not be addressed.

Plaintiffs cannot show that each of the class members purchased or sold securities in reliance on the documents at issue. *See In re Safety–Kleen Corp.*, 2002 WL 32349819, at *3 (D.S.C. Mar. 27, 2002) (dismissing Section 18 claim because plaintiffs could not show that each class member specifically relied on the defendant's filings when number of class members was unknown). Plaintiffs counter that Section 18 claims have been maintained in class actions and that the question of reliance is not appropriately resolved on a motion to dismiss.

Section 304 of the Sarbanes–Oxley Act of 2002 provides for forfeiture of bonuses and profits by certain corporate officers if the corporation is required to prepare an accounting restatement due to material noncompliance with financial reporting requirements. 15 U.S.C. § 7243. The parties dispute whether Section 304 may be enforced through a private cause of action. The parties also disagree on whether Plaintiffs have shown Cree "is required" to prepare a restatement under the language of the statute. *See id.*

The court in its discretion will defer ruling on these claims until an amended complaint and possibly a renewed motion to dismiss have been filed. Regardless of the question of reliance, the court is not confident that Plaintiffs have pled each of the material misstatements and omissions referenced in their Section 18 claim with sufficient particularity. *See In re Stone & Webster, Inc., Sec. Litig.*, 253 F.Supp.2d 102, 135 (D.Mass.2003) (dismissing Section 18 claim because plaintiffs had not pleaded misleading statements in 10–Ks with sufficient particularity). The court will revisit the issue of particularity when Plaintiffs replead their Section 10(b) claim. In the interest of expeditious and just resolution of this case, the court will address the Section 18 claim at that time. Similarly,

given the necessity of Plaintiffs' refiling, the court will not consider at this time whether a Section 304 claim may be sustained in a private-party, class-action lawsuit. The parties may further address these claims in future pleadings.

### V. *Leave to Amend*

■ In a footnote to their opposition brief, Plaintiffs have requested leave to amend their complaint should Defendants' motion to dismiss be granted. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a pleading "shall be freely given when justice so requires." Fed.R.Civ.P.R. 15(a). A party should be permitted to amend a pleading unless the amendment would prejudice the opposing party, the amending party has acted in bad faith, or the amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir.1986). At this time, none of these factors mandates dismissal of Plaintiffs' case with prejudice. Consequently, Plaintiffs will be granted a second opportunity to conform their pleading to the mandates of the PSLRA. *See McMullen v. Fluor Corp.*, 81 Fed.Appx. 197, 201, 2003 WL 22700954 (9th Cir.2003) (reversing dismissal with prejudice of plaintiff's third amended complaint under the PSLRA because plaintiffs had reasonable chance to successfully state claim on remand); *see also Ottmann*, 353 F.3d at 341–42 (affirming dismissal of securities fraud claims with prejudice after plaintiffs given opportunity to amend their complaint).

### CONCLUSION

For the foregoing reasons, the court will grant Defendants' motion to dismiss the complaint. Dismissal will be without prejudice. Plaintiffs will be given forty-five (45) days from the issuance of this opinion to

file an amended complaint in accordance with the pleading requirements of the PSLRA.

The court also will grant Plaintiffs' motion to strike Defendants' Exhibits 8, 21, 22, 23, 24, 25, 30, and 47 attached to the Declaration of Nicholas I. Porritt in Support of Defendants' Motion to Dismiss. Plaintiffs' motion to strike Defendants' Exhibit 18 of this Declaration will be denied.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

### ORDER

For the reasons set forth in the memorandum opinion file contemporaneously herewith,

IT IS ORDERED that Defendants' motion to dismiss [Doc. # 42] is **GRANTED**, and Plaintiffs' consolidated class action complaint is **DISMISSED** without prejudice. Plaintiffs shall have forty-five (45) days from the issuance of this order to file an amended complaint in accordance with the pleading requirements of the PSLRA.

IT IS FURTHER ORDERED that Plaintiffs' motion [Doc. # 49] to strike is **GRANTED** as to Defendants' Exhibits 8, 21, 22, 23, 24, 25, 30, and 47 attached to the Declaration of Nicholas I. Porritt in Support of Defendants' Motion to Dismiss, and Defendants' Exhibits 8, 21, 22, 23, 24, 25, 30, and 47 attached to the Declaration of Nicholas I. Porritt in Support of Defendants' Motion to Dismiss are **STRICKEN**.

IT IS FURTHER ORDERED that Plaintiffs' motion [Doc. # 49] to strike is **DENIED** as to Defendants' Exhibit 18 attached to the Declaration of Nicholas I. Porritt in Support of Defendants' Motion to Dismiss.